**NEW LIBERTY COMMON SCHOOL DIST. NO. 3 et al. v. MERCHANTS' & PLANTERS' BANK et al. (No. 2461.)**

(Court of Civil Appeals of Texas. Amarillo. April 8, 1925. Rehearing Denied May 27, 1925.)

**1. Depositaries ⬌7—Bond of bank not invalidated by additional provision to those required by statute.**

A bank's depository bond for county school funds conditioned in the identical·language of Vernon's Ann. Civ. St. Supp. 1918, art. 2443, contained an additional clause binding the bank to account for the funds at a certain rate of interest calculated on daily balances. *Held* that the additional clause did not invalidate the bond as a statutory one; it merely incorporating the statutory requirement of a depository under articles 2442, 2444.

**2. Depositaries ⬌7 — Bond covering school funds held not more onerous than statute provided.**

In considering a statutory bond, the provisions of the statute must be read into it as a part thereof, and therefore a depository bond for school funds conditioned under Vernon's Ann. Civ. St. Supp. 1918, art. 2443, was not more onerous than the statute provided, because it contained an additional clause binding the principal to "account for them (funds) together with interest at the rate of 4% per

annum, calculated on daily balances"; the clause merely incorporating what the statute requires of the depository under articles 2442, 2444.

**3. Depositaries ⬌13—Sureties of statutory bonds chargeable with notice of provisions of relating statute.**

Sureties of statutory bonds are chargeable with notice of all provisions of the statute relating to their obligation.

**4. Depositaries ⬌7—Variance in bond held immaterial.**

A county depository bond varied from the statutory form, under Vernon's Ann. Civ. St. Supp. 1918, art. 2443, by the addition of a clause binding the depository "to account for them (funds) together with 4% interest·calculated in daily balances." *Held* that such variance from statutory form was immaterial, since in an action upon the bond the depository's filed bid of "4%·on daily balances" would be considered in conjunction with the bond as forming the essential parts of depository's contract.

**5. Appeal and error ⬌1042(1)—Striking out trial amendment·on account of expired charter held harmless error.**

A surety upon a county depository bond set up by trial amendment a defense that the charter of the depository has expired before the acceptance and approval of a new bond, although immediately revived. *Held,* that it was harmless error for the court to strike this amendment, since the records disclosed no change in the name, business, management, or stockholders of the depository on revival of charter.

**6. Depositaries ⬌13—Acceptance of new bond releases former sureties.**

Under Vernon's Ann. Civ. St. Supp. 1918, arts. 2440, 2441, and 2444, a new county depository is required in July following each general election and a new bond given and approved every two years. Vernon's Sayles' Ann. Civ. St. 1914, art. 2770, provides that current balances of general and district school funds be carried to the credit of the succeeding year. *Held* the acceptance of a new bond relieved a former surety, since liability of the new sureties attach to the extent of the funds in the hands of the depository, it making no difference that the same depositary is chosen or not, providing conditions of the first bond were not breached before filing of the new one.

**7. Depositaries ⬌13—Surety of new depositary bond aware of transfer of current balance.**

The sureties of a county depository bond are conclusively presumed to know that any balance under a former bond must be transferred by law to their depository.

**8. Depositaries ⬌13—Surety not a guarantor of depository solvency.**

A bank was chosen as county depository for two successive terms. Plaintiff was a surety to its bond during first term. *Held* that plaintiff's liability was removed by acceptance of bond for second term, even‿though bank was insolvent during first term, since his only guar-

antee that his principal would pay checks lawfully drawn had been met.

**9. Evidence ⬅20(2)—It is a matter of common knowledge that few, if any, banks are able at all times to pay depositors' checks, if demand in full made same day.**

It is a matter of common knowledge that few, if any, banks are able at all times to pay depositors' checks, if they all demand their money in full the same day; such a contention being at variance with the well-recognized rules and customs of banking.

**10. Depositaries ⬅13—Surety liable only on breach of bond condition.**

A county depository's bond required it to safely keep and disburse school fund according to law, and pay such warrants as may be drawn by competent authorities. *Held*, in an action on the bond, that no breach is shown which would make sureties liable until bank failed to pay some check drawn by lawful authority, even though bank itself might become insolvent.

Appeal from District Court, Clay County; Paul Donald, Judge.

Action by the New Liberty Common School District No. 3 and others against the Merchants' & Planters' Bank and others. From the judgment plaintiffs appeal. Affirmed.

Weldon & McDonald, of Wichita Falls, and Vincent Stine, of Henrietta, for appellant New Liberty Common School Dist. No. 3.

Bullington, Boone & Humphrey and John B. King, all of Wichita Falls, for appellant Lory.

Taylor, Muse & Taylor, of Wichita Falls, for appellants Williams, Lovell, and Kerbow.

Wantland, Dickey & Glasgow, of Henrietta, and Carrigan, Montgomery, Britain, Morgan & King, and E. R. Surles, all of Wichita Falls, for appellee Henderson.

HALL, C. J. The New Liberty school district, joined by about 55 other common school districts of Clay county, 5 county line districts, and 4 independent school districts, and J. F. Vaden, county judge of said county, filed this suit for the use of themselves, the county, and all school districts against the Merchants' & Planters' Bank, W. J. Mangum, as receiver of said bank, joining as defendants J. J. Lory, J. P. Wilson, T. H. Marberry, G. W. Lovell, W. H. Kerbow, and E. Henderson, as sureties upon a county depository bond made payable to the county judge of said county and his successors; said bond being executed in 1921, covering a period of two years beginning February 15, 1921, and against said bank as principal and said Mangum as receiver and the other named defendants, except E. Henderson, as sureties, upon another county depository bond executed in 1923 to secure school funds, said bond also payable to the county judge of said county, and covering a period of two years beginning February 12, 1923.

The substance of the amended original petition is that defendant bank is duly incorporated under the laws of Texas, and that Mangum is the receiver of said bank; that on or about February 14, 1921, the commissioners' court of said county accepted the bid of said bank and appointed it the depository for the funds of said county for the term of two years beginning February 15, 1921, for the school funds of the county, upon said bank giving bond as such depository; that on February 17, 1921, the bank, as principal, and the other defendants, except the receiver, as sureties, executed and delivered to the county judge their statutory and official depository bond in the sum of $85,000, binding themselves jointly and severally that said bank would safely keep and faithfully disburse the school funds according to law and would pay such warrants as might be drawn on said funds by competent authority, and to account for said funds, together with interest at 4 per cent. calculated on daily balances, to the commissioners' court of said county and the state superintendent of public instruction; that said bond was on said day duly approved and filed with the county clerk; that thereafter, on February 12, 1923, said bank was again designated as a depository of such funds for two years, and on said day said bank, as principal, and all of the sureties on the first bond, except E. Henderson, as sureties, and said receiver executed and delivered to the county judge of said county and his successors a bond in the sum of $85,000, conditioned as was the bond above described, except that it covered such funds deposited for two years beginning February 12, 1923. This bond was also duly approved and filed with the clerk. Plaintiffs then set out the provisions of the statute with reference to the deposit of funds in said depository that such funds bear 4 per cent. interest protected by the provisions of said bond; that the funds of the county were deposited in said bank upon the strength of said bond and, by reason of the insolvency of said bank, defendants are estopped to deny the regularity and legality of the appointment and qualification of said bank, the sufficiency of the bond, and solvency of the sureties; that said bank closed its doors and ceased to do business on June 15, 1923, and was insolvent on February 12, 1923, and ever since said date; that the bank has breached the conditions of said bond, has failed to safely keep and disburse said funds and to pay warrants drawn by the several plaintiffs, and failed and refused to account for said funds; that no funds were carried and paid under said 1921 bond to the 1923 bond; and that said bank has earned no profits since February 12, 1923.

The petition alleges the amount of money due the respective plaintiffs on June 15, 1923,

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

when the bank closed its doors, and the amounts due them on February 15, 1921, and the several amounts deposited and withdrawn between February 15, 1921, and February 15, 1923, and from February 15, 1923, to June 15, 1923; the aggregate of the sums due plaintiffs being about $23,000 and interest at 4 per cent., some of said interest not having been paid at the time the bank ceased business. Both bonds were attached to the amended petition and made parts thereof.

The defendant Williams filed a separate answer, pleading misjoinder of parties plaintiff and causes of action; that said bonds were more onerous than the law required; that said bonds are not statutory bonds, and pleading his suretyship. Defendant Henderson also filed a separate answer, contending that the petition was insufficient because it did not show a breach of the 1921 bond upon which he was surety; that the acceptance by the commissioners' court of the 1923 bond upon which he was not a surety released the 1921 bond, and was a substitution therefor. He further alleged that there was no failure to pay plaintiffs' warrants as presented until June 15, 1923, and that at the expiration of the 1921 bond the bank had on hand sufficient funds to pay all plaintiffs their school money. He pleads his suretyship, and prays for contribution and substitution. The bank and its receiver answered by general demurrer and general denial. Marberry pleaded his suretyship. Defendant Lory answered by general and special exceptions, general denial, and specially that the plaintiffs common school districts were not bodies corporate with authority to sue; that plaintiffs did not allege that the preliminary requirements as to the selection of the depository had been complied with; that the bonds sued on were not statutory bonds, and had not become binding obligations. He pleaded suretyship, and prayed for contribution. Three of the defendants pleaded that the Seventy-Ninth judicial district had not been lawfully created by the act of the Thirty-Eighth Legislature. In bar, they pleaded practically the defenses set up by their codefendants.

By supplemental pleadings plaintiffs excepted to the answers of defendants, alleging that the bonds sued upon are not statutory, because the sureties were not solvent as required by law, since the solvency of the sureties was a matter for the benefit of the plaintiffs. They further pleaded that defendants were estopped to set up the invalidity of the depository law, the insolvency of sureties, and the failure to comply with the statute in the selection of the depository.

The case was tried by the court without the intervention of a jury, and resulted in a judgment for all of plaintiffs, except the independent school districts, against the bank, its receiver Mangum, and the sureties, Williams, Marberry, Lovell, Kerbow, and Lory, for the respective amounts due plaintiffs on the 15th day of June, 1923, as set out in their petition, together with interest; said judgment being based upon the bond of 1923. Judgment was rendered in favor of Henderson; that the independent school districts recover against the bank and Mangum, as receiver, the amounts due them on June 15, 1923.

The record shows that the statute has been complied with in advertising for bids and in selecting the depository for both terms. The orders of the commissioners' court sufficiently comply with the requirements of the statute. The condition of the first bond, dated February 17, 1921, is as follows:

"Now, therefore, if the said Merchants' & Planters' Bank shall safely keep and faithfully disburse the school funds according to law, and pay such warrants as may be drawn on such funds by competent authority, and shall account for them together with interest thereon at the rate of 4 per cent. per annum, calculated on daily balances, to the commissioners' court of said county, and to the state superintendent of public instruction, as required by law, then this obligation shall be void, but otherwise it shall remain in full force and effect."

The second bond, dated February 12, 1923, is conditioned as the first. It is signed by the same sureties, with the exception of E. Henderson. Both bonds show to have been approved in open court, and are made exhibits to plaintiffs' pleadings.

Material findings of the court are as follows: (4) That in the matter of the selection and designation of a depository, and in the acceptance and approval of the respective bonds, the law was in all things complied with by the commissioners' court; (5) the Merchants' & Planters' Bank closed its doors on the 15th day of June, 1923, and has done no business since said date, and was on June 15, 1923, and has been ever since, insolvent; (6) that during the time said bank was the depository under the successive terms there was a balancing of its books at intervals of about two months, but at such times no money was ever exchanged or delivered to the plaintiffs; that when the bond dated February 15, 1921, expired, viz.: on the 15th day of February, 1923, the books were not balanced, but a credit was entered and passed automatically to the new depository, and funds in the form of balances were delivered to the new depository, acting under the bond of February 15, 1923, from the former bond, and an account was automatically set up on the books of the bank in favor of the plaintiffs under the last bond; (7) that, since the bank closed its doors on the 15th of June, 1923, and ceased to do business, it has paid no sums to either of the plaintiffs herein, and at said date was unable to pay said sums, and has ever since been unable, though demand for payment has been made by the proper authorities representing the several plaintiffs.

(273 S.W.)

[1, 2] Contention is made that the bonds in question are more onerous than the statute requires, and, because the conditions expressed therein go beyond the condition as provided by Vernon's Ann. Civ. St. Supp. 1918, art. 2443, they are not statutory, but common-law, bonds, and the court erred in considering them because of this variance. We cannot assent to this contention. The bonds are conditioned in the identical language of the above article, but further bind the principal to "account for them (the funds), together with interest thereon at the rate of 4 per cent. per annum, calculated on daily balances, to the commissioners' court of said county and the state superintendent of public instruction, as required by law." The bond would have been sufficient without the clause just quoted, but the insertion of such clause does not invalidate them, since it merely incorporates in the bonds what the statute requires of the depository. Vernon's Ann. Civ. St. Supp. 1918, art. 2444, provides that the county tax collector shall deposit all funds collected by him for the state, county, and various districts in such depository as soon as collected, and provides "which shall bear interest on daily balances at the same rate as such depository or depositories have undertaken to pay for the use of county funds and the interest accruing thereon shall be apportioned by the tax collector to the various funds earning the same. The bond of such county depository or depositories shall stand as security for all such funds."

[3-5] Article 2442 provides that the bidder "offering to pay the largest rate of interest per annum for said funds" may be selected as the depository, and, further, "the interest upon such county funds shall be computed upon the daily balances to the credit of such county with such depository, and shall be payable to the county treasurer monthly, and shall be placed to the credit of the jury fund or to such funds as the commissioners' court may direct." Since the bonds upon their face obligate the bank to disburse and account for such funds according to law, and the law expressly provides that the bonds shall stand as security for all funds, and further provides that the interest shall be calculated upon daily balances and become part of such funds, the bonds are not more onerous than the statute requires. In considering a statutory bond, the provisions of the statute must be read into it as a part thereof, and sureties are chargeable with notice of all provisions of the statute relating to their obligation. The statutes above quoted are part and parcel of the obligation assumed by the sureties. American Surety Co. of N. Y. v. Tarbutton (Tex. Civ. App.) 248 S. W. 435; Trinity Portland Cement Co. v. Lion Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483; Fogarty et al. v. Davis et al. (Mo. Sup.) 264 S. W. 879; Henry County v. Salmon et al., 201 Mo. 136, 100 S. W. 20; Jackson County v. Enright, 198 Mo. App. 527, 201 S. W. 599. Moreover, in view of the statute, the bonds must be considered in connection with the bank's bids filed with the commissioners' court, since they are the bank's proposals filed with the court, and, as such, are essential parts of the contracts. In each bid the bank proposes to pay 4 per cent. on daily balances, and to execute a bond to secure its obligation. As stated, the bonds were made exhibits to plaintiffs' petition, and, if it be admitted that there was a variance, it is immaterial. The Missouri court, in the Henry County Case, supra, holds that, where faith and credit have been given to a bond executed by a banker selected as a county depository, and the bond has performed the function of obtaining for the banker the funds of the county, the sureties are estopped from claiming immaterial variances from the statutory form in order to avoid liability. We heartily approve that doctrine. It appeared during the trial that the bank's charter had expired before the acceptance and approval of the new bond, but that immediately a new charter had been obtained. The attorneys of Henderson filed a trial amendment, setting up this fact as a defense. This amendment was stricken by the court upon motion, and such action is assigned as error. We think, under the facts, the court's ruling, if error, is harmless. It may be inferred from the record that there was no change under the new charter, either in the name, the management, business, or stockholders, from that existing under the old charter. It is simply a continuation of the life of the corporation as it originally existed, and no contrary intention of the corporators is apparent. 7 Fletcher's Cyclopedia of Corporations, § 4984, says:

"Where the charter of a corporation is merely amended either by such act or under a general law, though no change in the identity of the corporate body—no corporation of one corporation and creation of another—the corporation under the amended charter is liable for all debts contracted by it before the amendment. The same is true where the charter of a corporation is merely extended or revived or the corporation reorganized without creating a new corporation, as explained in a former section. Thus, where a company is merely reincorporated, the new company is liable for the debts of the old; and it is further held that, where the circumstances attending the creation of a new corporation and its succession to the property, franchises, and business of another corporation are such as to show that the new corporation is in reality, however it may be in law, a mere continuation of the old corporation; or, in other words, that, although technically, as a matter of law, a new corporation may be created, yet, if the old corporation ceases to exist, and all its assets and franchises are acquired by the new, which is in reality a mere continuation of the old, as where there is no judicial or execution sale, the new corporation is deemed to have impliedly assumed, and is liable upon, all the obligations of the old."

The same author, section 4838, says:

"The charter of a corporation may be amended or extended, or even revived after its expiration without affecting its existence or identity in any way. The corporation before and after the amendment, extension or revival, is the same body both in fact and in law."

This principle is further discussed by the same author in sections 5000, 4957, 414, and 415.

[6, 7] The next contention to be considered is the effect of the acceptance and approval of the new bond on the liability of Henderson, who was a surety only upon the first bond. Vernon's Ann. Civ. St. Supp. 1918, article 2440, requires the commissioners' court, at its February term next following each general election, to receive proposals from prospective depositories, and to select a depository at such time for the funds of the county; and article 2441 provides that any banking corporation, etc., desiring to bid, shall deliver to the county judge a sealed proposal stating the rate of interest which such corporation, etc., is willing to pay "on the funds of the county for a term between the date of such bid and the next regular time for the selection of a depository." Article 2444 provides, in part, that, as soon as the bond is given and approved, an order shall be made upon the minutes of the court, designating such banking corporation, etc., as the depository of the funds of the county "until sixty days after the time fixed for the next selection of a depository; and, thereupon, it shall be the duty of the county treasurer of said county, immediately upon the making of such order, to transfer to said depository all of the funds belonging to said county, as well as all funds belonging to any district or other municipal subdivision thereof not selecting its own depository, and immediately upon receipt of any money thereafter, to deposit same with said depository to the credit of said county, district and municipality."

It is apparent from the language of these statutes that the Legislature intended that a new depository should be selected in February following each general election, and that a new bond should be given and approved every two years. The first bond upon which Henderson is a surety contains this recital:

"Whereas, the above bounden Merchants' & Planters' Bank offered the highest bid on daily balances (4%), and was, on February 14, 1921, chosen by the commissioner's court as a depository for the funds of Clay county, including school funds for a term of two years beginning February 15, 1921."

Article 2770 provides as follows:

"All balances of the general school fund not appropriated for the current year shall be carried over by the treasurer as part of the general school fund for the county for the suc-

ceeding year, and unexpended balances to the credit of any district shall be carried over for the benefit of such school district," etc.

We think it is clear from these statutes that liability upon the first bond is limited to a period of 2 years, and not exceeding 60 days thereafter, unless a new bond is filed before the expiration of that time. The new bond, having been filed before such time expired, had the legal effect of releasing the sureties upon the first bond, provided the conditions of the first bond had not been breached by the depository before the second was filed. It is certain that upon the acceptance of the second bond that liability of the sureties thereon immediately attached to the extent of the funds in the hands of the depository, and it cannot be inferred from the statute that the Legislature intended that there should be a double indemnity under the conditions existing in this case. As suggested by appellee Henderson, suppose a new depository had been selected in 1923, and it had bid 8 per cent. interest on the daily balances, clearly Henderson could not have been held liable for defalcation under that bond, when he was obligated to pay only 4 per cent. in the bond signed by him. The fact that the commissioners' court chooses the same depository, agreeing to pay the same rate of interest, would not change the rule as to his liability. We think the provisions of article 2770, supra, automatically transferred any balance of the school fund guaranteed under the first bond to the accounts of the respective districts under the second bond, and the bank, in making such transfer upon its books, simply complied with this law. The transfer was effective whether actually made upon the books of the bank or not, when the new bond was filed and the obligation upon the sureties upon the first bond then terminated. Fidelity & Deposit Co. of Maryland v. Wilkinson County, 109 Miss. 879, 69 So. 865. The transfer of such funds brought it within the terms of the second bond, and the bank was, from that moment, no longer the principal of Henderson and his cosureties under the first bond. The condition of the bond that the "funds shall be faithfully kept" by their principal, the depository, and "accounted for according to law," was met by such transfer, and the bank instantly became the principal of the sureties upon the second bond. The second set of sureties are conclusively presumed to know that a balance, if any, must be transferred under the law.

[8-10] It is contended by appellants that the bank became insolvent while the first bond was still in effect, and, because of such insolvency, the sureties on the first bond should be held jointly liable with the second set of sureties. While the general rule is that one is insolvent when the sum of his liabilities exceeds the total value of his assets, we think this rule should not be ap-

plied in this case, because the sureties on the first bond did not guarantee the solvency of the bank generally. Their undertaking is that their principal, the bank, will pay all checks lawfully drawn upon the funds named in the bond, by the proper authorities upon presentation, and there is no evidence that the bank had ever failed to do so prior to the month of June, 1923, and certainly there is no such failure prior to February, 1923, when the second bond was filed. Until it appears that the bank has failed to pay some check drawn upon it by lawful authority, no breach of the conditions of the bond has been shown. It is a matter of common knowledge that few, if any, banks are able at all times to pay its depositors' checks if they all demand their money in full the same day. Such a contention would be at variance with the well-recognized rules and custom of banking. Until it is shown that the bank had failed to pay some check drawn by the proper authorities upon the funds in question during the time when the first bond was effective, no breach of its conditions is shown which would make the sureties liable, even though the bank might, in fact, be insolvent under the general rule stated above. We think the evidence is sufficient to show that at the time the new bond was filed the bank had sufficient funds on hand and deposited in other banks to its credit to have paid all of the funds guaranteed by the first bond, if demand had been made prior to February 12, 1923. In our opinion, however, this is immaterial, since no failure to pay was shown prior to June, 1923, when the bank finally closed its doors.

What has been said disposes of the other contentions in the case.

The judgment is affirmed.